# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| RUBEN BATTLE | ) | |
| | ) | |
| Plaintiff, | ) | 14 C 1785 |
| | ) | |
| v. | ) | Judge John Z. Lee |
| | ) | |
| SERGEANT JACOB ALDERDEN, | ) | |
| individually and as agent of the Chicago | ) | |
| Police Department, CITY OF CHICAGO, | ) | |
| ILLINOIS, WALGREEN'S CORP., | ) | |
| JAMAL WRIGHT, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Ruben Battle has sued Chicago Police Sergeant Jacob Alderden and the City of Chicago for due process and equal protection violations pursuant to 42 U.S.C. § 1983. After the Court granted Defendants' first motion to dismiss, Battle filed an amended complaint. Once again, Defendants have filed a motion to dismiss. For the following reasons, the Court grants in part and denies in part Defendants' new motion to dismiss [53].

## Factual Background

Battle is a Cook County Sheriff's Deputy. *See* Am. Compl. ¶ 5. At all times relevant to his Amended Complaint, Battle was also working as a security officer for a private security company at a Walgreens retail store located at 5036 S. Cottage Grove Avenue in Chicago, Illinois. *See id.* ¶ 3.

On March 16, 2012, Sergeant Alderden responded to a call regarding a crime in progress outside of the Walgreens store where Battle was working as a security officer. *Id.* ¶ 8. After arriving on the scene, Alderden told Battle that he needed Battle to testify that he would be able to identify the suspects involved in the crime and that Alderden would tell him how to testify. *Id.*

¶ 8. When Battle told Alderden that he did not have a clear enough view of the alleged offenders to provide a positive identification and that he would not testify otherwise, Alderden reportedly told Battle that he knew people that could get Battle fired. *Id.* ¶¶ 8, 11–12.

Alderden subsequently filed a complaint with the Cook County Sheriff's Department Office of Professional Review ("OPR") stating that Battle had refused to cooperate with Alderden's investigation. *Id.* ¶¶ 6, 9. Based on the complaint, Dart initiated an investigation. *Id.* ¶ 10.

During the OPR investigation, Battle told the investigators and subsequently testified during a hearing that: (a) a different Walgreens employee, Jerry McGhee, was able to positively identify the suspects; (b) Alderden nevertheless tried to coerce Battle into providing false testimony because Alderden felt that Battle would be perceived as more credible than McGhee, due to Battle's position as a corrections officer; and (c) Defendant Wright, the Walgreens Store Manager on duty that night, falsely claimed that Battle could identify the alleged perpetrators and "attempted to convince" Alderden that Battle could provide a positive identification. *Id.* ¶¶ 12–15. Battle prevailed at the hearing. *Id.* ¶ 15.

Beyond these allegations, the sequence of events alleged in the complaint is muddled at best. Sometime between the OPR hearing and December 17, 2012, Dart de-deputized Battle without a hearing. *Id.* ¶ 16. Then, on December 17, 2012, Battle testified at an arbitration hearing appealing Dart's decision, but he did not prevail and his de-deputization was upheld. *Id.* ¶ 16.

According to the complaint, Battle was de-deputized at the same time that certain charges were pending against him before the Cook County Sheriff's Merit Board (the "Merit Board"). *Id.* ¶ 17. Battle eventually was suspended for twenty-nine days with pay for failing to report to the Sheriff's Office that he had another job as a security officer, even though (according to Battle)

his supervisors were well aware of this fact. *Id.* ¶¶ 20, 26. The complaint also alleges that, on August 28, 2013, Alderden and Wright testified before the Merit Board in a manner that was largely consistent with their prior allegations against Battle. *Id.* ¶¶ 27–28.

Because he was de-deputized, Battle was unable to carry his firearm and thus could not work as a private security officer. *Id.* ¶ 18.

## Legal Standard

To survive a motion to dismiss pursuant to Rule 12(b)(6), the complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The factual allegations in the complaint must at least "raise a right to relief above the speculative level." *Bell Atl. Corp.*, 550 U.S. at 555. The Court must accept as true all well-pleaded allegations in the complaint and draw all possible inferences in the plaintiff's favor. *See Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). Mere legal conclusions, however, "are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679.

## Analysis

### I. Procedural Due Process

Defendants argue that Battle's due process claims fail because neither is based on a recognized protected interest. "Due process, the Supreme Court has repeatedly written, is a flexible concept that varies with the particular situation." *Doherty v. City of Chi.*, 75 F.3d, 318, 323 (7th Cir. 1996); *see also Zinermon v. Burch*, 494 U.S. 113, 127 (1990). "Noting that the fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner, the Court has rejected the notion that the state is always required to provide a hearing prior to the deprivation of property." *Doherty*, 75 F.3d at 323 (citations omitted).

"Procedural due process claims require a two-step analysis. The first step requires us to determine whether the plaintiff has been deprived of a protected interest; the second requires a determination of what process is due." *Strasburger v. Bd. of Educ., Hardin Cnty. Cmty. Unit Sch. Dist. No. 1*, 143 F.3d 351, 358 (7th Cir. 1998).

### A. Primary Employment—Sheriff's Deputy

Battle's complaint can be read as alleging two versions of the protected interest of which he was deprived. The first is his interest in his job as a sheriff's deputy. Contrary to Defendants' assertion, *see* Reply 3, even when an employee is suspended with pay, a constitutional deprivation can occur. A paid suspension can give rise to a procedural due process claim if the suspension imposes a "substantial indirect economic effect" on the employee. *See Palka v. Shelton*, 623 F.3d 447, 452–53 (7th Cir. 2010). In this case, Battle solely relies on the argument that the suspension meant that he was unable to work as a security officer at Walgreens due to his inability to carry a firearm. *See* Resp. Mtn. Dismiss 5. According to Battle, this loss is sufficient to support a due process claim.

The Seventh Circuit, however, in an analogous circumstance, held that a suspended teacher's inability to coach extracurricular activities is not the type of deprivation that triggers federal due process. *See Townsend v. Vallas*, 256 F.3d 661, 676 (7th Cir. 2001). In *Townsend*, the plaintiff was a tenured teacher who, because of a temporary reassignment, had lost the income from coaching extracurricular sports. *See id.* Although he was receiving his full teacher's salary, Townsend argued that the lost income from coaching sports was an indirect economic effect of his suspension. *See id.* The Seventh Circuit disagreed and held that this particular loss of income was not atypical or significant enough to trigger a constitutional claim. *See id.* In this case, Battle's inability to work as a security officer at Walgreens is even less integral to his

position as a deputy than Townsend's extracurricular pay was to his job as a teacher. *See also Lullen v. City of East Chi.*, 350 F.3d 604, 614 (7th Cir. 2003). Accordingly, the fact that Battle lost his ability to work as a security officer because he was no longer able to carry a firearm is insufficient to support his due process claim.

**B.     Secondary Employment—Security Officer at Walgreens**

Alternatively, Battle appears to argue that his job as a security officer at Walgreens was itself a protected interest subject to the Due Process Clause. In its motion to dismiss, the City contends that the Due Process Clause does not protect Battle's protected interest in his (private) secondary employment. *See* Mtn. Dismiss 6–8. In response, Battle merely points out that the City's motion cites only opinions of district courts and other circuit. *See* Resp. Mtn. Dismiss 5. Without explaining why the secondary employment should be an interest protected by the Due Process Clause, Battle asks the Court to engage in its own analysis. *See id.* at 5–6.

The Court concludes that a plaintiff's ability to engage in a particular secondary employment is not the type of interest that triggers the protection of federal due process. *See Neish v. City of Chi.*, 338 F. Supp. 2d 927, 930–31 (N.D. Ill. 2004); *Fort Wayne Patrolmen's Benevolent Ass'n v. City of Fort Wayne*, 625 F. Supp. 722, 731–32 (N.D. Ind. 1986); *State Troopers Non-commissioned Officers Ass'n of New Jersey v. New Jersey*, 399 F. App'x 752, 755–56 (3d Cir. 2010) (unpublished). To have a property interest in a benefit for purposes of the Due Process Clause, "a person clearly must have more than an abstract need or desire for it. He must, instead, have a legitimate claim of entitlement to it." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972). Deprivations of property are not actionable under the Constitution unless they are atypical and significant in relation to the "deprivations" that people suffer in contractual employment disputes. *See Baerwald v. City of Milwaukee*, 131 F.3d 681, 683 (7th

5

Cir. 1997). Here, Battle alleges that, as consequence of the proceedings against him with respect to his deputy job, he was unable to carry a firearm and work as a private security officer. *See* Am. Compl. ¶ 18. Unlike discharge, a plaintiff's claim of entitlement to a specific secondary employment cannot be the basis of a due process claim. *Cf. Baerwald*, 131 F.3d at 683 (stating that not every dispute over sick leave or denial of a fringe benefit creates an interest protected by the Constitution).

Because Battle's procedural due process claim does not identify a protected interest, Count I of Battle's amended complaint is dismissed with prejudice.

## II. Equal Protection

In his amended complaint, Battle alleges a class-of-one claim under the Equal Protection Clause, arguing that Battle was singled out by Alderden. *See* Am. Compl. ¶ 71.[1] Defendants raise two arguments for why Battle's equal protection claim fails. First, they suggest that Battle's class-of-one claim fails because he does not identify in his complaint any similarly situated individuals who were not subjected to the same treatment as he. *See* Mtn. Dismiss 9; Reply 7. Second, Defendants argue that there was a rational basis for Alderden's treatment of Battle. *See* Mtn. Dismiss 9–10; Reply 7.

At this preliminary stage, Battle is not required to identify comparators in order to establish a class-of-one claim. The Seventh Circuit has held that plaintiffs "alleging class-of-one equal protection claims do not need to identify specific examples of similarly situated persons in their complaints." *Miller v. City of Monona*, 784 F.3d 1113, 1120 (7th Cir. 2015).

---

[1] Although Battle's amended complaint asserts that it is raising a class-of-one claim, the complaint still contains language that implies he is bringing a protected-class equal protection claim. *See, e.g.*, Am. Compl. ¶ 71 ("Plaintiff appropriately makes a 'class of one' black person targeted for differential harmful treatment in his employment and secondary employment by Defendant Alderden, a white police detective.").

6

Defendants next argue that Alderden's desire to solve the crime that occurred outside of the Walgreens store is a rational basis that explains the different treatment of Battle. This argument, however, misinterprets the rational basis requirement. To state a class-of-one claim, the "plaintiffs must allege that state actors lacked a rational basis for singling them out for intentionally discriminatory treatment." *Miller*, 784 F.3d at 1121. A plaintiff must rebut "any reasonably conceivable state of facts that could provide a rational basis for the classification." *Id.* Here, Battle alleges that Alderden pressured him to lie about what he had seen and, when Battle refused to do so, filed a complaint against Battle with the Sheriff's Office of Professional Review. *See* Am. Compl. ¶¶ 8–9. Taking these allegations as true, there is no rational reason for Alderden's treatment of Battle. *See Ivy v. Powers*, 2009 WL 230542, at *6 (N.D. Ill. Jan. 30, 2009) (holding that the plaintiff had stated a class-of-one claim by alleging that officers had falsified police reports regarding the plaintiff).

Defendants' argument misconstrues the underlying basis for Battle's claim. Battle likely has no problem with the fact that Alderden tried to solve the crime. It is the approach Alderden took to do so that is the subject of Battle's equal protection claim. Accordingly, in order for the motion to dismiss to succeed, there must be a conceivable rational basis for Alderden having asked Battle to lie and having filed a meritless complaint against Battle. Because the Court can come up with no rational basis for those actions, Battle's claim-of-one claims survives Defendants' motion to dismiss.

**Conclusion**

For the reasons stated herein, Defendants' motion to dismiss [53] is granted in part and denied in part. Battle's procedural due process claim (Count I) is dismissed with prejudice. The Court denies Defendants' motion to dismiss as to Battle's equal protection claim (Count II).

7

**IT IS SO ORDERED.**  **ENTERED 12/9/15**

_____
**John Z. Lee**
**United States District Judge**