IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| RUBEN BATTLE, | ) | |
| | ) | |
| Plaintiff, | ) | 14 C 1785 |
| | ) | |
| v. | ) | Judge John Z. Lee |
| | ) | |
| JACOB ALDERDEN, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Ruben Battle ("Battle"), formerly a Cook County Sheriff's Deputy, has sued Chicago Police Officer Jacob Alderden ("Alderden") and the City of Chicago (collectively, "Defendants") pursuant to 42 U.S.C. § 1983 for violating his constitutional rights under the Equal Protection Clause of the Fourteenth Amendment. Battle's claims arise from an incident in which he refused to identify a suspect in a crime that Alderden was investigating, following which Alderden purportedly threatened him and then reported him to the Sheriff's department for disciplinary action. Defendants have moved for summary judgment. For the reasons stated herein, Defendants' motion [112] is granted.

## Factual Background

The following facts are undisputed unless otherwise noted.[1] Battle was employed as a security guard at a Walgreens store in Chicago on March 16, 2012.

---

[1] Defendants filed a reply to Battle's response to their statement of undisputed facts. Defs.' Reply Supp. Defs.' LR 56.1(a)(3) Stmt., ECF No. 139. Such a reply, however, is not contemplated by Northern District of Illinois Local Rule (LR) 56.1, which allows moving parties to "submit a concise reply" to a non-movant's counterstatement of facts but does not

Defs.' LR 56.1(a)(3) Stmt. ¶ 1, ECF No. 113. He was concurrently employed as a sheriff's deputy by the Cook County Sheriff's Office ("Sheriff's Office"), but he was not on duty in that capacity on March 16. *Id.* ¶ 2. He was, however, wearing a vest emblazoned with the sheriff's star that identified him as a sheriff's deputy on that day. *Id.* ¶ 50.

While working at Walgreens on March 16, Battle was standing outside the store with Jerry McGhee,[2] a store clerk, when he saw a man attempting to fire a gun at a moving vehicle. Defs.' LR 56.1(a)(3) Stmt. ¶¶ 9, 11–14. He then saw the man hand the gun to someone else. *Id.* ¶ 16. Battle went inside the Walgreens store to report what he had seen to Jamal Wright, the store manager. *Id.* ¶ 18. Alderden, a sergeant with the Chicago Police Department, was notified of the issue and called to the scene. *Id.* ¶¶ 6, 19, 21.

Battle told Alderden that the recipient of the gun had taken it into a nearby park. *See id.* ¶ 23. He also described the clothing the individuals had been wearing. *Id.* Specifically, Battle observed that the individual carrying the gun into the park wore a jacket with "some lettering in the back" that "was like a square type of a[n] area." *Id.*, Ex. A, Battle Dep., at 51:23–52:1. Alderden proceeded to the

---

permit movants to file a reply to the non-movant's response to its original statement. The Court therefore disregards Defendants' reply. *See Boss v. Castro*, 816 F.3d 910, 914 (7th Cir. 2016) ("The district court's discretion to require strict compliance with Local Rule 56.1 has been upheld time and again.").

[2] The record is unclear on the spelling of McGhee's last name. Plaintiff's brief refers to him by both "McGee" and "McGhee." Pl.'s Mem. Opp. Mot. Summ. J. 3, 10, ECF No. 132. Defendants, however, exclusively use "McGhee." Defs.' Mem. Supp. Mot. Summ. J. 2, 4, 6, ECF No. 114. In the interest of consistency, the Court uses "McGhee."

park, recovered a gun, detained certain individuals he found there, and conducted a "show-up identification" with witnesses who were still at the Walgreens store. *Id.* ¶¶ 25–27. During the show-up, Battle told Alderden that he could only identify the individuals by their clothing but suggested that McGhee might be able to provide a better identification. *See id.* ¶¶ 29, 30.

Despite being concerned for his safety, McGhee participated in the identification process. *Id.* ¶¶ 35–36. McGhee identified two individuals as having been involved in the attempted shooting. *Id.*, Ex. C, Alderden Dep., at 37:11–15. After McGhee participated in the identification process, another officer asked Battle whether he could identify a specific individual as one of the suspects. *Id.* ¶¶ 36, 38. Battle recognized the back of the individual's jacket as bearing the same design as the jacket the suspects had worn. *Id.* ¶¶ 39, 41. He could not, however, identify the suspect by his face. *Id.* ¶ 42.

Alderden then told Battle he would need to come to court and identify the suspect. *Id.* ¶ 44. According to Battle, he presumed that he would be asked to identify the individual by face, rather than identifying the person by his jacket. *Id.*, Ex. A, Battle Dep., at 92:5–93:3. And so Battle refused, explaining again that he had not seen the suspect's face. *Id.* ¶ 45. In response, Alderden asked Battle, "Have you ever testified in court before? I'll tell you what to say. If you don't know what to say, I'll tell you what to say." *Id.* at 93:12-18; *id.* ¶¶ 46, 47. At that point, again assuming that Alderden did not want him to simply identify the person by the clothes that he wore, but also by face, Battle became "suspicious" that Alderden was

3

attempting to "set [him] up to identify who that guy was." *Id.*, Ex. A., Battle Dep., at 92:5–93:3, 94:9–14. Despite this suspicion, however, Battle did not ask Alderden what he meant by his statement or what Alderden wanted him to say in court, and refused to provide any testimony at all. *Id.* ¶ 48.

Soon thereafter, Alderden asked Battle what he wanted Alderden to put in his police report, and Battle said he could not tell him what to say. *Id.* ¶¶ 54, 55. Alderden told Battle that he knew people in "high places" at Walgreens and that he would never work at Walgreens again if he did not cooperate with the investigation. Pl.'s LR 56.1(b)(3)(C) Stmt. ¶¶ 3, 4, ECF No. 126; Defs.' Resp. Pl.'s LR 56.1(b)(3)(C) Stmt. ¶¶ 3, 4, ECF No. 140. Battle further claims that Alderden was "loud and belligerent in tone and manner" toward him, which Alderden denies. Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 5; Defs.' Resp. Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 5.

Later, Alderden made an official complaint to the Sheriff's Office stating that Battle had failed to cooperate and had recanted a prior identification. Defs.' LR 56.1(a)(3) Stmt. ¶ 58.[3] Alderden believed that because Battle was a law enforcement officer, he had a duty to cooperate with other law enforcement officers. *Id.* ¶ 64.[4] The Sheriff's Office then opened an investigation into Battle based on two separate allegations: (1) whether he had failed to cooperate with Alderden, and (2) whether he had filed the proper secondary employment paperwork with the

---

[3] Plaintiff admits Alderden made a complaint to this effect. Pl.'s LR 56.1(b)(3)(B) Stmt. ¶ 58, ECF No. 126. He denies, however, that he was uncooperative or recanted any identification. *Id.*

[4] Plaintiff objects to this fact on the grounds that he has no such duty. Pl.'s LR 56.1(b)(3)(B) Stmt. ¶ 64. Plaintiff does not, however, deny that this was Alderden's belief.

4

Sheriff's Office with respect to his employment at Walgreens. *Id.* ¶ 67. In his complaint, Battle alleges that he was ultimately de-deputized because of his lack of proper secondary employment paperwork. Am. Compl. ¶¶ 17, 20, ECF No. 48. As a result of the de-deputization, he lost his secondary employment with Walgreens. *Id.* ¶ 18.

### Legal Standard

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court gives "the non-moving party the benefit of conflicts in the evidence and reasonable inferences that could be drawn from it." *Grochocinski v. Mayer Brown Rose & Maw, LLP*, 719 F.3d 785, 794 (7th Cir. 2013). In order to survive summary judgment, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the nonmovant "must establish some genuine issue for trial such that a reasonable jury could return a verdict in [his] favor." *Gordon v. FedEx Freight, Inc.*, 674 F.3d 769, 772–73 (7th Cir. 2012).

### Analysis

Battle claims that Alderden's actions denied him equal protection of the laws as a class of one under the Fourteenth Amendment.[5] In addition to prohibiting the

---

[5] Defendants also seek summary judgment as to Battle's due process claims. Defs.' Mem. Supp. at 7–10. This Court previously dismissed Battle's due process claims, however, rendering Defendants' request moot. *See Battle v. Alderden*, No. 14 C 1785, 2015 WL

5

government from discriminating on the basis of certain "immutable characteristics," the Equal Protection Clause also protects against government actors irrationally "singling out a person for arbitrary abuse." *Brunson v. Murray*, 843 F.3d 698, 705 (7th Cir. 2016).[6] Such a "class-of-one" claim requires the plaintiff to demonstrate that he has suffered "intentional, irrational, and arbitrary discrimination." *Bell v. Duperrault*, 367 F.3d 703, 707 (7th Cir. 2004). The plaintiff's burden of proof is "very significant." *Id.* at 708.

A class-of-one plaintiff must show that (1) he has been intentionally treated differently from someone who is similarly situated and (2) there is no rational basis for the difference in treatment. *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam). It is the plaintiff's burden to prove the lack of a rational basis by excluding all possible rational explanations for the government action. *Fares Pawn, LLC v. Ind. Dep't of Fin. Insts.*, 755 F.3d 839, 845 (7th Cir. 2014); *Smith v. City of Chi.*, 457 F.3d 643, 652 (7th Cir. 2006) (internal quotation marks and citations omitted).

Identifying similarly situated comparators who were treated differently can be used to demonstrate the absence of a rational basis. *Fares Pawn*, 755 F.3d at

---

8330103, at *3 (N.D. Ill. Dec. 9, 2015); *Battle v. Alderden*, No. 14 C 1785, 2015 WL 1522943, at *4 (N.D. Ill. Mar. 30, 2015).

[6] Battle initially brought a protected-category equal protection claim on the basis of his race, but the Court dismissed the claim with leave to replead. *Battle*, 2015 WL 1522932, at *5. He suggests in his amended complaint and response to Defendants' statement of facts that he believes Alderden discriminated against him based on his race. *See* Am. Compl. ¶¶ 67–68, 71; Pl.'s LR 56.1(b)(3)(B) Stmt. ¶ 60–61. In his response brief, however, he states that his claim is limited to an equal protection class-of-one theory. Pl.'s Mem. Opp. at 1. Thus, the Court evaluates only whether he can proceed to trial on a class-of-one claim.

6

845. Where the lack of a rational basis can be proven through a pattern of discriminatory harassment alone, however, the plaintiff need not identify a similarly situated comparator. *Brunson*, 843 F.3d at 706–07; *see also Miller v. City of Monona*, 784 F.3d 1113, 1121 (7th Cir. 2015).

In addition, evidence of personal animus on the part of the defendant can be used to prove the lack of a rational basis. *Bell*, 367 F.3d at 709. Whether animus is a required element that the plaintiff must prove, however, remains an open question in this circuit. In 2012, the Seventh Circuit heard a class-of-one claim *en banc* in a specific attempt to answer this question but was unable to reach a majority. Writing for four judges, Judge Posner believed that plaintiffs must show both the absence of a possible rational basis for the challenged action and evidence of animus. *Del Marcelle v. Brown Cty. Corp.*, 680 F.3d 887, 889 (7th Cir. 2012) (en banc). Judge Easterbrook concurred separately, contending that animus should have no role. *Id.* at 899 (Easterbrook, J., concurring). Judge Wood, writing for five judges, dissented and argued that animus should not be required but can be used to prove the lack of a rational basis. *Id.* at 913 (Wood, J., dissenting). Notwithstanding the Seventh Circuit's division in *Marcelle*, however, if there is a rational basis for the action, "that will be the end of the matter—animus or no." *Fares Pawn*, 755 F.3d at 845; *see also D.B. ex rel. Kurtis B. v. Kopp*, 725 F.3d 681, 686 (7th Cir. 2013).

Alderden argues that Battle cannot sustain his equal protection class-of-one claim by any of these means. Specifically, he maintains that Battle has failed to

7

identify a similarly situated comparator, present evidence of direct animus, and rebut the proffered rational basis for Alderden's actions—namely, that Alderden believed that it was his duty to report to the Sheriff's Office a sheriff's deputy who refused to cooperate in a criminal investigation. Alderden further argues that he is entitled to qualified immunity. The Court will address each of these arguments in turn.[7]

I.  **Similarly Situated Comparator**

Defendants first argue that there is no genuine issue of material fact as to whether Alderden treated a similarly situated comparator differently, thereby foreclosing this avenue of disproving a rational basis. To be similarly situated, comparators must be "identical or directly comparable to the plaintiff in all material respects." *Miller*, 784 F.3d at 1120 (internal quotation marks and citations omitted). But there is no "precise formula" for determining similarity. *McDonald*, 371 F.3d at 1002. While it is typically for the jury to decide whether individuals are similarly situated, "a court may properly grant summary judgment where it is clear that no reasonable jury could find that the similarly situated requirement has been met." *Id.*

---

[7]  Defendants also argue that Battle has not identified any laws of which Alderden failed to provide him equal protection. Defs.' Mem. Supp. at 12. Class-of-one claims, however, are not limited to circumstances in which a private citizen is deprived of the benefit of an actual law, but also include instances where a government actor uses the color of law to harass a private citizen. *E.g.*, *Kyung Hye Yano v. City Colls. of Chi.*, No. 08 CV 4492, 2013 WL 3791616, at *2 (N.D. Ill. July 19, 2013) (denying summary judgment in a class-of-one claim where the defendant teacher had discriminated against the plaintiff by "applying a different grading system to her exams, refusing to meet with her during office hours . . . [and] treating her with open hostility in and outside the classroom").

8

Battle argues that Jamal Wright and Jerry McGhee, the other employees at Walgreens, were similarly situated to him but treated differently because they were not subject to Alderden's "derision, belligerent rebuke[,] and yelling." Pl.'s Mem. Opp. at 10. He further observes that Alderden did not report them to their employers, as he did with Battle. S*ee id.* Turning first to Wright, he is not a similarly situated comparator because he did not witness the crime that Alderden was investigating. Defs.' LR 56.1(a)(3) Stmt. ¶ 18. The basis for Battle's suit in this case is Alderden's report to the Sheriff's Office, which Alderden filed based on Battle's refusal to identify suspects of a crime. Quite simply, Wright cannot be considered similarly situated because he did not even see the crime.

Nor is McGhee similarly situated to Battle because, as Battle acknowledges, McGhee was not a law enforcement officer at the time of the incident.[8] Pl.'s Mem. Opp. at 10; *see Kolbe v. Hogan*, 813 F.3d 160, 187 (4th Cir. 2016) (Agee, J., concurring) (holding that law enforcement officers are materially different from the general public in part because of their duties to protect the public and enforce the law), *rev'd on other grounds*, 849 F.3d 114 (4th Cir. 2017) (en banc). As a sheriff's deputy, Battle had a different standing in his community because of his "publicly oriented responsibilities." *Kolbe*, 813 F.3d at 187. McGhee, on the other hand, was a Walgreens store clerk and thus had no such obligation to the public. Thus, whereas Battle possessed a duty to the public to enforce the law, McGhee did not,

---

[8] Although Battle was not on duty as a sheriff's deputy on the day in question, he was employed at Walgreens in a security capacity, Defs.' LR 56.1(a)(3) Stmt. ¶ 3, and he was wearing a vest with the sheriff's star on it that identified him as a deputy, *id.* ¶ 50.

9

making them dissimilar. *Id.*; *see also Maglietti v. Nicholson*, 517 F. Supp. 2d 624, 638 (D. Conn. 2007) (holding that job responsibilities were relevant factors in determining whether the plaintiff and any alleged comparators were similarly situated); *cf. Russo v. City of Hartford*, 341 F. Supp. 2d 85, 116 n.27 (D. Conn. 2004) (holding that the plaintiff, who was a police detective, was not similarly situated to the police chief). What is more, McGhee participated in the identification process and made a facial identification, while Battle did not. Accordingly, no reasonable jury could conclude that McGhee and Battle were similarly situated, but treated differently.

Battle's failure in this regard is grounds enough to grant Defendants summary judgment on Battle's claim. This is not a case in which a pattern of discriminatory treatment obviates the need to identify a similarly situated comparator. *Geinosky v. City of Chi.*, 675 F.3d 743, 748, 748 n.3 (7th Cir. 2012); *Hill v. Rubald*, No. 13 C 4847, 2017 WL 201357, at *8 (N.D. Ill. Jan. 18, 2017) (holding that, where there was no pattern of harassment, the plaintiff's inability to identify a similarly situated comparator who was treated differently was sufficient to justify granting summary judgment in favor of the defendants). However, the Seventh Circuit has suggested that in some circumstances where "the plaintiff alone suffer[s]" the discriminatory treatment at issue, a comparator may not be necessary. *See Brunson*, 843 F.3d at 707. Accordingly, for the sake of completeness, the Court will proceed to consider Battle's remaining avenues of eliminating a rational basis for Alderden's actions.

## B. Overt Animus

Defendants also argue that there is no evidence demonstrating any overt animus by Alderden against Battle. Recall that animus can be used as a method of demonstrating that there is no rational basis for government action. *Id.* Demonstrating animus, though, requires evidence of "deep-seated animosity" that goes beyond mere rudeness. *Bell*, 367 F.3d at 709 (internal quotation marks and citations omitted). Animus-based claims also tend to require a lengthy pattern of mistreatment. *See Brunson*, 843 F.3d at 707–08; *Swanson v. City of Chetek*, 719 F.3d 780, 785 (7th Cir. 2013) (holding that the plaintiff presented a strong argument for the existence of animus in part because he "detailed a series of alleged actions by [the defendant] that appeared illegitimate on their face"); *see also Geinosky*, 675 F.3d at 748–49.

Battle has not adduced evidence that Alderden displayed animus. His claim of animus relies on the argument that Alderden "threatened and browbeat" Battle in an attempt to force him to identify the suspect. Pl.'s Mem. Opp. at 12. But this "threaten[ing] and "browbeat[ing]" amounts to nothing more than the isolated incident on which his complaint is based and evidence of one incident between a government official and the plaintiff is generally insufficient to support animus in a class-of-one claim. Moreover, there is no evidence of any prior history between Battle and Alderden or any indication that the incident was the culmination of a feud or part of a pattern of harassment. Granted, Alderden admits to telling Battle that he intended to inform his supervisors at Walgreens about his lack of cooperation, and Battle maintains that Alderden was belligerent when addressing

11

Battle in the immediate aftermath of the incident. But even if Alderden was rude and angry, his actions are insufficient to establish animus. For these reasons, Battle has not presented evidence that Alderden's actions toward him were motivated by personal animus.

That said, as noted above, Chief Judge Wood's opinion in *Del Marcelle* left open the possibility that a showing of animus may not be required for a class-of-one claim. *See id.*, 680 F.3d at 913 (Wood, J., dissenting). Therefore, despite Battle's failure to present evidence sufficient for a reasonable jury to find animus, the Court will examine whether a reasonable jury could find that he has nevertheless excluded all possible rational explanations for Alderden's action.

### III. Conceivable Rational Basis

Defendants claim that Alderden had a rational basis for reporting Battle to the Sheriff's Office because Alderden believed that Battle had a duty to cooperate with a criminal investigation and that Battle had breached his duty. Whether a rational basis exists for government action is determined by analyzing whether the action has a rational relationship to a legitimate government interest. *Smith*, 457 F.3d at 652. The burden is on the plaintiff, though, to "'eliminate any reasonably conceivable state of facts that could provide a rational basis for the explanation.'" *Bell*, 367 F.3d at 708 (quoting *Discovery House, Inc. v. Consol. City of Indianapolis*, 319 F.3d 277, 282 (7th Cir. 2003)). Whether the plaintiff has done so is generally a question for the jury, but a court may grant summary judgment if no reasonable jury could find that a rational basis for the defendant's action was absent. *Knaus v.*

*Town of Ledgeview*, 561 F. App'x 510, 514 (7th Cir. 2014); *RJB Props. Inc. v. Bd. of Educ. of City of Chi.*, 468 F.3d 1005, 1010 (7th Cir. 2006).

Importantly, an action does not amount to an Equal Protection violation even if based on a mistaken belief, so as long the action is rationally related to a legitimate government interest, and the belief is reasonable. *RJB Props.*, 468 F.3d at 1010. Particularly where state actors are vested with discretion, they are permitted to reasonably exercise that discretion, regardless of whether their decisions turn out to be correct. *E.g.*, *id.* at 1011 (holding that a government agency could refuse to do business with the plaintiff because of a belief that the plaintiff had committed wrongdoing, regardless of whether that wrongdoing actually occurred); *Fares Pawn*, 755 F.3d at 848 (holding that the government is allowed to make discretionary decisions about the credibility of individuals without violating the Equal Protection Clause). To that end, police officers are given wide enforcement discretion, such that a single mistake is insufficient grounds for a class-of-one claim. *See Geinosky*, 675 F.3d at 748 (holding that the rational explanation for the defendant officers' actions disappeared somewhere after the "first several" bogus parking tickets).

Defendants argue that Alderden's belief that Battle had a duty to cooperate with his investigation provides a rational explanation for his reporting Battle to the Sheriff's Office. Battle, however, argues that no official duty exists, and that Alderden has provided nothing that supports the existence of such a duty. For purposes of this motion, the Court assumes Battle is correct that he was under no

13

official duty to cooperate with Alderden. But, as explained above, it is not enough that Alderden was mistaken, so long as his actions were reasonably related to a legitimate state interest. Here, Alderden wanted Battle, a fellow law enforcement officer, to cooperate with his investigation and help solve a crime. Alderden was under the impression that, because Battle was also a law enforcement officer, he owed Alderden a duty to cooperate with him. Further, Alderden believed that Battle had breached this duty, given that Battle refused to testify in any capacity, despite having identified a jacket that one of the individuals had been wearing. Thus, when Battle refused to testify, Alderden thought it appropriate to pressure him to reconsider, and when he still refused, Alderden decided it was prudent to report him to the Sheriff's Office. Alderden therefore made a discretionary decision to report Battle in pursuit of the government's legitimate interests in investigating a crime.[9] This is a rational basis for Alderden's actions, and Battle has not produced evidence from which a reasonably jury could find that he has negated it.

Battle correctly points out that, while police officers have broad discretion in enforcing laws, Alderden's alleged violation is not a case of selective enforcement of an established law. Instead, Alderden believed that Battle had a duty to cooperate with him when, at least according to Battle, he did not. But this is a distinction without a difference. Alderden reasonably believed that Battle had a duty to help assist his investigation, which was rationally related to a state interest in

---

[9] Battle does not argue that investigating a crime and seeking cooperation in such an investigation from another law enforcement officer is not a legitimate state interest. *Doe v. Moore*, 410 F.3d 1337, 1345 (11th Cir. 2005) ("It has long been in the interest of government to protect its citizens from criminal activity.").

14

investigating crime. Furthermore, he acted within his discretion on the basis of this belief only once, rather than targeting Battle repeatedly.

Battle also argues that Alderden attempted to suborn perjury, which cannot be rationally related to a legitimate government interest because it is arguably criminal. Pl.'s Mem. Opp. at 13. As a point of reference, Illinois law defines suborning perjury as "knowingly procur[ing] or induc[ing] another" to "make[ ] a false statement, material to the issue or point in question, knowing the statement is false" while under oath. 750 Ill. Comp. Stat. 5/32-2 to -3. Here, Alderden asked Battle if he had ever testified in court before, and told him, "If you don't know what to say. I'll tell you what to say." Defs.' LR 56.1(a)(3), Ex. A, Battle Dep. at 93:12–18. For Battle, this caused him to be "suspicious" because he thought that Alderden "was trying to set [him] up to identify who that guy was." *Id.* at 92:5–93:3, 94:9–14. But the fact is that Battle had noticed the distinctive jackets that the two perpetrators had worn when they ran from the scene, and Battle had indeed identified one of the individuals to Alderden previously by reference to his jacket. *Id.* at 51:19–52:5; 87:23–88:2. What is more, Battle did not ask Alderden what he meant by his statement or what exactly it was that Alderden wanted him to say in court. *Id.* at 95:11-15. Nor is there any evidence that Alderden actually asked to "make something up" as Battle feared. *Id.* at 95:3–4. Battle may have been "suspicious" of Alderden's motives, but without more, Battle's own suspicions are insufficient to defeat summary judgment. *See McGreal v. Vill. of Orland Park*, 850 F.3d 308, 314 (7th Cir. 2017) ("[A] suspicion is not enough to get past a motion for

15

summary judgment.") (citation omitted); *Kim v. Dawn Food Prods., Inc.*, 206 Fed. Appx. 558, 560 (7th Cir. 2006) (A plaintiff's "own suspicion was not a substitute that could defeat a motion for summary judgment.").[10]

For all of these reasons, Battle has not produced evidence from which a reasonable jury could find that there was no rational explanation for Alderden's actions.

## II. Qualified Immunity

Defendant Alderden further argues that even if an issue of material fact remained as to the constitutionality of his actions, he would still be entitled to summary judgment on qualified immunity grounds. Police officers are entitled to qualified immunity and thus protection from civil liability as long as "'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity claims comprise two elements: (1) the plaintiff must have alleged a violation of a constitutional right, and (2) the right must have been clearly established at the time of the incident. *Id.* at 232. For a right to be clearly established, it must be "clear to a reasonable offic[ial] that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001).

---

[10] Further, even assuming for the sake of argument that Alderden's statement could be considered a demand that Battle lie in court, for the reasons discussed above, the actions taken by Alderden as a result of Battle's refusal would fall well short of the lengthy pattern of mistreatment that could support a class-of-one claim. *See supra* at 11–12.

16

Even though qualified immunity is a defense and summary judgment places the burden on the movant (here, Alderden) to establish that there is no genuine issue of fact, plaintiffs have the burden of defeating qualified immunity claims even at the summary judgment stage. *Rabin v. Flynn*, 725 F.3d 628, 632 (7th Cir. 2013); *accord Mannoia v. Farrow*, 476 F.3d 453, 457 (7th Cir. 2007). Plaintiffs can defeat qualified immunity claims either by "'point[ing] to a clearly analogous case establishing a right to be free from the specific conduct at issue' or by showing that 'the conduct [at issue] is so egregious that no reasonable person could have believed that it would not violate clearly established rights.'" *Wheeler v. Lawson*, 539 F.3d 629, 639 (7th Cir. 2008) (alterations in original) (quoting *Smith v. City of Chi.*, 242 F.3d 737, 742 (7th Cir. 2001)).

First, as discussed above, the record does not support Battle's class-of-one claim. But, even assuming, for the purposes of argument, that it did, Alderden would be entitled to qualified immunity on the grounds that the right allegedly violated was not clearly established at the time of the incident. The act of which Battle is complaining is the report that Alderden filed with the Sheriff's Office, and the right alleged to exist is the right for law enforcement officers to be free from fellow officers filing such reports when their colleagues refuse to testify as part of an investigation. Battle has not analogized to any cases that establish that this right existed in March 2012, when the altercation at issue occurred, and the Court has

likewise been unable to find any cases establishing such a right.[11] Battle argues that Alderden's acts constituted criminal attempts to suborn perjury, but this argument fails for the reasons stated above. Therefore, because Battle has been unable to identify any cases establishing a constitutional right to be free from treatment resembling Alderden's, he has not demonstrated that the right was clearly established at the time of the incident. Alderden is therefore entitled to qualified immunity.

## Conclusion

For the reasons stated herein, Defendants' motion for summary judgment [112] is granted. Judgment will be entered in favor of Defendants. Civil case terminated.

IT IS SO ORDERED.	ENTERED   9/19/17

_____
**John Z. Lee**
**United States District Judge**

---

[11] In fact, on March 16, 2012, the barriers to succeeding on class-of-one claims were even higher than they are today, because Seventh Circuit cases relaxing the requirement of a similarly situated comparator had not yet been decided.